## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

CYNTHIA ANNE RAULERSON,

      Plaintiff,

v.                                 Case No.  3:20-cv-972-MCR

ACTING COMMISSIONER OF
THE SOCIAL SECURITY
ADMINISTRATION,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for a period of disability and disability insurance benefits ("DIB"), filed on February 26, 2016, and supplemental security income ("SSI"), filed on March 28, 2016.[2]  Following an administrative hearing on September 18, 2019 at which Plaintiff was represented by counsel, the assigned Administrative Law Judge ("ALJ") issued a decision finding Plaintiff not disabled from December 4, 2015, the

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.  (Docs. 18 & 21.)

[2] Plaintiff had to establish disability on or before December 31, 2020, her date last insured, in order to be entitled to a period of disability and DIB.  (Tr. 17.)  The earliest time that SSI benefits are payable is the month following the month in which the application is filed.  *See* 20 C.F.R. § 416.335.

alleged disability onset date, through October 2, 2019, the date of the
decision.  (Tr. 17-27, 34-65.)

Plaintiff is appealing the Commissioner's decision and, as she has
exhausted her available administrative remedies, this case is properly before
the Court.  Based on a review of the record, the briefs, and the applicable law,
the Commissioner's decision is **REVERSED and REMANDED**.

## I.     Standard

The scope of this Court's review is limited to determining whether the
Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841
F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings
are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389,
390 (1971).  "Substantial evidence is more than a scintilla and is such
relevant evidence as a reasonable person would accept as adequate to support
a conclusion."  *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th
Cir. 2004).  Where the Commissioner's decision is supported by substantial
evidence, the district court will affirm, even if the reviewer would have
reached a contrary result as finder of fact, and even if the reviewer finds that
the evidence preponderates against the Commissioner's decision.  *Edwards v.
Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d
1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a
whole, taking into account evidence favorable as well as unfavorable to the

decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II.    Discussion

Plaintiff raises two issues on appeal.  First, Plaintiff argues that the ALJ's finding that she "could frequently perform fingering and handling through the date of the hearing decision, despite bilateral carpal tunnel syndrome, is not supported by the record in this case."  (Doc. 23 at 10.) Plaintiff argues that the ALJ failed to "acknowledge the worsening of [her] bilateral carpal tunnel syndrome in 2018, about a year after she was examined by" William Guy, M.D., a consultative examiner.  (*Id.* at 11.) Plaintiff contends that "[t]he ALJ's conclusion that [she] could frequently finger and frequently handle is arbitrary and without explanation" and that the ALJ "failed to create a logical bridge from the evidence to his conclusion." (*Id.* at 16 (emphasis omitted).)  Because the ALJ failed to "explain how the medical evidence supported the" residual functional capacity ("RFC") "finding that [she] could frequently handle and frequently perform fine manipulation," Plaintiff requests that the Court "reverse the Commissioner's decision and remand the case for additional analysis of her upper extremity limitations." (*Id.* at 17.)  Second, Plaintiff contends that "[d]espite reportedly giving

significant weight to Dr. Guy's consultative examination opinion, the Commissioner erred in failing to address Dr. Guy's opinion as far as functional limitations." (*Id.* at 18-24.)  Defendant counters that the ALJ applied the proper legal standards and that his findings are supported by substantial evidence.  (Doc. 24.)  The Court agrees with the Plaintiff on the first issue and, therefore, does not address the remaining issues.

### A.    Standard for Evaluating Opinion Evidence and Subjective Symptoms

The ALJ is required to consider all the evidence in the record when making a disability determination.  *See* 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3).   With regard to medical opinion evidence, "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011).  Substantial weight must be given to a treating physician's opinion unless there is good cause to do otherwise.  *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

"'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004).  When a treating physician's opinion does not warrant controlling

weight, the ALJ must nevertheless weigh the medical opinion based on: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical evidence supporting the opinion, (4) consistency of the medical opinion with the record as a whole, (5) specialization in the medical issues at issue, and (6) any other factors that tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6).  "However, the ALJ is not required to explicitly address each of those factors.  Rather, the ALJ must provide 'good cause' for rejecting a treating physician's medical opinions." *Lawton v. Comm'r of Soc. Sec.*, 431 F. App'x 830, 833 (11th Cir. 2011) (per curiam).

Although a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion, *see Wilson v. Heckler*, 734 F.2d 513, 518 (11th Cir. 1984) (per curiam); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2), "[t]he opinions of state agency physicians" can outweigh the contrary opinion of a treating physician if "that opinion has been properly discounted," *Cooper v. Astrue*, No. 8:06-CV-1863-T-27TGW, 2008 WL 649244, *3 (M.D. Fla. Mar. 10, 2008).  Further, "the ALJ may reject any medical opinion if the evidence supports a contrary finding." *Wainwright v. Comm'r of Soc. Sec. Admin.*, No. 06-15638, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (per curiam); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (same).

"The ALJ is required to consider the opinions of non-examining [S]tate agency medical and psychological consultants because they 'are highly qualified physicians and psychologists, who are also experts in Social Security disability evaluation.'" *Milner v. Barnhart*, 275 F. App'x 947, 948 (11th Cir. 2008) (per curiam); *see also* SSR 96-6p[3] (stating that the ALJ must treat the findings of State agency medical consultants as expert opinion evidence of non-examining sources). While the ALJ is not bound by the findings of non-examining physicians, the ALJ may not ignore these opinions and must explain the weight given to them in his decision. SSR 96-6p.

When a claimant seeks to establish disability through her own testimony of pain or other subjective symptoms, the Eleventh Circuit's three-part "pain standard" applies. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (per curiam). "If the ALJ decides not to credit such testimony, he must articulate explicit and adequate reasons for doing so." *Id.*

> The pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Id.*

---

[3] SSR 96-6p has been rescinded and replaced by SSR 17-2p effective March 27, 2017. However, because Plaintiff's application predated March 27, 2017, SSR 96-6p was still in effect on the date of the ALJ's decision.

Once a claimant establishes that her pain is disabling through objective medical evidence from an acceptable medical source that shows a medical impairment that could reasonably be expected to produce the pain or other symptoms, pursuant to 20 C.F.R. §§ 404.1529(a), 416.929(a), "all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms must be considered in addition to the medical signs and laboratory findings in deciding the issue of disability," *Foote*, 67 F.3d at 1561. *See also* SSR 16-3p[4] (stating that after the ALJ finds a medically determinable impairment exists, the ALJ must analyze "the intensity, persistence, and limiting effects of the individual's symptoms" to determine "the extent to which an individual's symptoms limit his or her ability to perform work-related activities").

As stated in SSR 16-3p:

In considering the intensity, persistence, and limiting effects of an individual's symptoms, [the ALJ must] examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.
. . .
In evaluating an individual's symptoms, it is not sufficient for our adjudicators to make a single, conclusory statement that "the individual's statements about his or her symptoms have been

---

[4] SSR 16-3p rescinded and superseded SSR 96-7p, eliminating the use of the term "credibility," and clarifying that "subjective symptom evaluation is not an examination of an individual's character."  SSR 16-3p.

considered" or that "the statements about the individual's symptoms are (or are not) supported or consistent." It is also not enough for our adjudicators simply to recite the factors described in the regulations for evaluating symptoms.[5] The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms.

. . .

In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]

SSR 16-3p.

"[A]n individual's attempts to seek medical treatment for symptoms and to follow treatment once it is prescribed" will also be considered "when evaluating whether symptom intensity and persistence affect the ability to

---

[5] These factors include: (1) a claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (3) any precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate the claimant's pain or other symptoms; (5) any treatment, other than medication, received by the claimant to relieve the pain or other symptoms; (6) any measures (other than treatment) used to relieve the pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p.

perform work-related activities." *Id.* "[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, [the adjudicator] may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record." *Id.* However, the adjudicator "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id.* In considering an individual's treatment history, the adjudicator may consider, *inter alia*, one or more of the following:

- That the individual may have structured his or her activities to minimize symptoms to a tolerable level by avoiding physical activities or mental stressors that aggravate his or her symptoms;
- That the individual may receive periodic treatment or evaluation for refills of medications because his or her symptoms have reached a plateau;
- That the individual may not agree to take prescription medications because the side effects are less tolerable than the symptoms;
- That the individual may not be able to afford treatment and may not have access to free or low-cost medical services;
- That a medical source may have advised the individual that there is no further effective treatment to prescribe or recommend that would benefit the individual;
- That due to various limitations (such as language or mental limitations), the individual may not understand the

appropriate treatment for or the need for consistent treatment.

*Id.*

## B.   Relevant Medical Evidence of Record

On September 9, 2014, Plaintiff presented to St. Vincent's Medical Center's Emergency Room ("ER") with tingling in both hands with an onset date one week prior.  (Tr. 416.)  Plaintiff reported that the bilateral tingling in her hands was worse at night but also occurred during the day.  (*Id.*)  Plaintiff also stated that her bilateral forearms and hands felt weak and at times her fingers swelled.  (*Id.*)  She also reported a history of Grave's disease which was treated with "surgery and iodide" but she indicated that "her last PET scan before she lost her insurance was abnormal."  (*Id.*)  Plaintiff also stated she had "joint pain all over her body as well as low back and neck pain" and noted "some periorbital swelling as well."  (*Id.*)  She stated she was "on no [medications] at [that] time due to loss of insurance."  (*Id.*)  On examination, Plaintiff's testing was negative for Tinel's and Phalen's signs. (Tr. 418.)

On February 24, 2015, Plaintiff presented to St. Vincent's ER complaining of intermittent bilateral hand swelling and numbness during the previous two weeks, shortness of breath at work, and needing medication refill for hypothyroidism.  (Tr. 411.)  The ER report indicated that Plaintiff

lost her insurance after changing jobs and that Walmart, her employer at the time, did not provide benefits until after one year of employment. (*Id.*) Plaintiff also reported a flare-up of her carpal tunnel syndrome. (*Id.*) Plaintiff received a refill for Synthroid for hypothyroidism and was referred to an orthopedist for her carpal tunnel syndrome. (Tr. 413.) She was instructed to return to the ER if her condition worsened. (*Id.*)

On August 4, 2015, Plaintiff presented to St. Vincent's ER with facial swelling, rash on her arm, general weakness with joint pain, and stated that she had been out of her thyroid medication for four to five months. (Tr. 404.) It was noted that Plaintiff had a history of carpal tunnel syndrome, breast cancer, hypothyroid, Grave's disease, and chronic renal insufficiency. (Tr. 405.)

On August 28, 2015, Plaintiff presented to St. Vincent's ER with complaints of neck pain that radiated down her left shoulder and bilateral hand numbness. (Tr. 396.) Neurological examination revealed normal findings, including 5/5 motor strength in both the distal right upper extremity and the distal left upper extremity. (Tr. 398.) A CT scan without contrast of Plaintiff's cervical spine revealed no evidence of acute osseous injury or subluxation, preserved lateral alignment, no prevertebral soft tissue swelling, and mild pleural parenchymal scarring. (Tr. 398.) Plaintiff's diagnosis was cervical radiculopathy. (Tr. 399.)

On February 21, 2016, Amila Perera, M.D., Plaintiff's treating physician, indicated that Plaintiff has "multiple chronic medical problems including [t]hyroid disorder, [n]eck and back pain, [c]arpal tunnel syndrome[,] and anxiety." (Tr. 681.)  According to Dr. Perera, "[d]ue to her medical problems, [Plaintiff] has difficulty with her current work at Walmart which requires lifting, stocking[,] and pushing/pulling." (*Id.*)  Dr. Perera noted that Plaintiff "also has anxiety associated with working at the cash register" and opined that "[g]iven her medical problems, she was unable to mee[t] her job requirements." (*Id.*)

On March 3, 2016, Plaintiff presented to the ER with neck pain.  (Tr. 469.)  Plaintiff reported that she was lifting heavy logs and branches at home and when she pulled the rope to tie around the branches, she felt "pain and 'pop' in [her] upper back/neck." (*Id.*)  She reported "[r]adiating pain to the right upper extremity." (*Id.*)  Neurological examination revealed, *inter alia*, equal motor strength, bilaterally; normal sensory findings of the upper extremities, bilaterally; "[r]eflexes: [b]ilateral, biceps 4/5, triceps 4/5, [i]ntact, symmetrical." (Tr. 470.)  Plaintiff was diagnosed with acute neck pain.  (Tr. 471.)

In a Consultative Psychological Evaluation dated May 26, 2016, Plaintiff reported, in part, that although she previously enjoyed fishing as a hobby, "she has difficulty reeling a fish in as well due to physical issues such

as carpal tunnel syndrome."  (Tr. 572.)

On February 8, 2017, Dr. Guy, performed an Internal Medicine Examination of Plaintiff upon referral from the Disability Determination Division.  (Tr. 596.)  According to Dr. Guy, Plaintiff reported, in relevant part, being diagnosed with bilateral carpal tunnel syndrome in 2015, having pain with gripping and lifting in both wrists, experiencing numbness and tingling in her hands with driving and while sleeping, and that she had not received treatment for these symptoms.  (Tr. 597.)  Upon examination, Dr. Guy observed, *inter alia*, that Plaintiff "does have a positive Tinel sign in the right and left wrist," her deep tendon reflexes were physiologic and equal in the upper and lower extremities, no sensory deficit was noted, and she had 5/5 strength in the upper and lower extremities.  (Tr. 600.)  Dr. Guy also observed that Plaintiff's finger dexterity was intact and her grip strength, bilaterally, was 5/5.  (*Id.*)  Dr. Guy's diagnoses included bilateral carpal tunnel syndrome with "[n]o evidence of weakness or decreased dexterity on exam."  (*Id.*)  Dr. Guy's prognosis for Plaintiff was "fair" and his Medical Source Statement ("MSS") read as follows: "The claimant has moderate restrictions with regard to sitting, standing, walking, climbing stairs, bending, kneeling, and squatting.  She should avoid smoke, including tobacco smoke, dust, and other known respiratory irritants."  (Tr. 601.)

On April 3, 2018, Linda Heilman, ARNP at the Baker Rural Health

Clinic, provided Plaintiff with an orthopedic referral to "Dr. Pino" for Plaintiff's bilateral carpal tunnel syndrome. (Tr. 637-38.)  On April 10, 2018, Plaintiff presented to Wilbert B. Pino, M.D., FAAOS,[6] her treating orthopedic surgeon at Dopson Family Medical Center/Baker County Medical Center, for bilateral hand pain with an onset date approximately six years prior. (Tr. 609-10.)  Plaintiff stated that "her right hand is worse than the left," she described the pain as sharp, and reported swelling and being "woken [up] at night with pain." (Tr. 610.)  Plaintiff also reported "numbness in all fingers on both hands intermittently." (*Id.*)  Despite being diagnosed with carpal tunnel syndrome a number of years prior, Plaintiff had not undergone electrodiagnostic testing or X-rays. (Tr. 611.)  It was noted that she "continues to have paresthesias [which] are worse at night and appeared to worsen with activity." (*Id.*)  Plaintiff also reported "*increasing difficulty over the last several months*" with her carpal tunnel syndrome, which was "interfering with" her quality of life. (*Id.* (emphasis added).)

Dr. Pino then performed an orthopedic exam, observing as follows:

> Full range of motion of both shoulders[,] elbows[,] and wrist[s].
> Deep tendon [reflexes] present and equal bilaterally at the biceps,
> triceps[,] and brachioradialis.  Motor strength 5/5 in all motor
> groups.  Strong positive Tinel's [sign] over the carpal tunnel
> bilaterally.  Positive Phalen's sign.  Normal distal neurovascular

---

[6] Dr. Pino is a board-certified orthopedic surgeon and an active Fellow of the American Academy of Orthopedic Surgeons. *See* https://www.orthoedge.com/wilbert -pino-md/ (last visited Mar. 14, 2022).

>   exam with normal sensation in all dermatomes.  2 point
>   sensation intact to 5mm in all digits.

(*Id.*)  Dr. Pino noted that pending studies included X-rays and EMGs/NCV.

(Tr. 612.)  Dr. Pino assessed Plaintiff with bilateral carpal tunnel syndrome,

"right greater than left."  (*Id.*)   Dr. Pino's treatment plan read as follows:

>   Clinical examination today [is] consistent with bilateral carpal
>   tunnel syndrome with *significant symptomatology* of the right as
>   compared to the left side.  Patient has not had any
>   electrodiagnostic studies or [X]-rays done in the past.  We have
>   ordered an EMG/NCV skeletal structure.  *Based on the clinical*
>   *examination today I believe that she has carpal tunnel syndrome*
>   *and surgical intervention is likely to be suggested.*  We have
>   discussed briefly the risks[,] benefits[,] [and] complications of
>   surgery.  We will have the patient return to see me after the
>   EMG/NCV as well as the [X]-rays are obtained.[7]

(Tr. 612 (emphasis added).)  Plaintiff's bilateral carpal tunnel diagnosis was

also noted in treatment notes from Baker Rural Health Clinic dated June 7,

2018 (Tr. 646) and April 9, 2019 (Tr. 655).

##   C.    The ALJ's Findings

At the first step of the five-step sequential evaluation process,[8] the ALJ

found that Plaintiff had not engaged in gainful activity since the alleged

---

[7] On June 5, 2019, Plaintiff submitted "Claimant's Recent Medical
Treatment" form, in which she explained as follows: "Dr. William Pino has
suggested surgery for my [right] [fractured] foot which was done on 12/26/17.  He
also suggest [sic] surgery for my [right] carpal tunnel [sic] which I can[']t get done
until I have an EMG done.  I can't afford the test."  (Tr. 388.)

[8] The Commissioner employs a five-step process in determining disability.
*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

onset date of December 4, 2015.  (Tr. 19.)  At step two, the ALJ found

Plaintiff had the following severe impairments: degenerative disc disease;

bilateral carpal tunnel syndrome; hypothyroidism; chronic kidney disease;

asthma; and a history of right heel fracture, surgically repaired.  (*Id.*)  The

ALJ also found that Plaintiff's gastroesophageal reflux disease ("GERD"),

hypertension, and major depressive disorder were non-severe impairments.

(Tr. 20.)  At step three, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled

one of the listed impairments.  (Tr. 20-21.)

Before proceeding to step four, the ALJ found that Plaintiff had the

RFC to perform light work,[9] "except with no more than frequent handling and

fingering" and "no concentrated or excessive exposure to pulmonary irritants

(dust, fumes, extremes in temperature, or humidity)."  (Tr. 21.)  In

determining Plaintiff's RFC, the ALJ stated that he "considered all symptoms

and the extent to which these symptoms can reasonably be accepted as

consistent with the objective medical evidence and other evidence, based on

the requirements of 20 [C.F.R.] [§§] 404.1529 and 416.929 and SSR 16-3p."

---

[9] By definition, light work involves lifting no more than twenty pounds at a
time with frequent lifting or carrying of objects weighing up to ten pounds; it
requires a good deal of walking, standing, or sitting most of the time with some
pushing and pulling of arm or leg controls.  20 C.F.R. §§ 404.1567(b), 416.967(b);
SSR 83-10.

(*Id.*)  The ALJ also stated that he considered the "opinion evidence in accordance with the requirements of 20 [C.F.R.] [§§] 404.1527 and 416.927." (*Id.*)

The ALJ then discussed Plaintiff's subjective complaints, summarizing her hearing testimony as follows:

> The claimant testified that she was unable to work due to Grave's disease, thyroid immunodeficiency, degenerative disc disease of the neck, back pain, chronic obstructive pulmonary disease ["COPD"], meniscal tear of left knee, ankle pain, carpal tunnel syndrome, kidney insufficiency, and anxiety.  She stated she suffered from chronic fatigue, pain[,] and swelling of [her] hands and face.  The claimant testified that doing chores was painful. She stated she was unable to stand or sit for extended periods due to pain.  She stated she had been hospitalized due to chest pain.  She stated she had problems with memory and confusion. The claimant testified she could only drive short distances due to pain, numbness, and swelling.  She stated she was on several medications.  She stated she had a history of breast cancer, status post chemotherapy and radiation.  She stated she did laundry and household chores with breaks.  She stated that her husband tried to help, but that it was hard because of his disability.  The claimant testified that during a 12-hour day, she lied down 5-6 hours.  She stated she had problems sleeping at night due to pain.

(*Id.*)  Although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that her "statements concerning the intensity, persistence[,] and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record."  (Tr. 21-22.)

The ALJ then addressed the objective medical evidence, in relevant part, as follows:

> In February of 2017, the claimant underwent a physical exam at the request of the Social Security Administration.  She reported a history of back pain with radiculopathy, neck pain with radiculopathy, TMJ, Grave's disease, breast cancer[,] renal insufficiency, carpal tunnel syndrome, knee pain, [GERD], and asthma. . . .  There was no evidence of join subluxations, contractures, or ankylosis; and joints [were] [s]table and non-[t]ender without erythema, heat, swelling, effusion, or synovial membrane thickening.  There were no trigger points evident.  She had a positive Tinel['s] sign in bilateral wrists.  Deep tendon reflexes were physiologic and equal in upper and lower extremities.  There were no sensory deficit[s] noted and strength was 5/5 in the upper and lower extremities.  There was no cyanosis, clubbing, or edema of the extremities and pulses were physiologic and equal.  There was no muscle atrophy evident.  Hand and finger dexterity was intact, and grip strength was 5/5 bilaterally.

(Tr. 23.)  The ALJ noted that after examining Plaintiff, Dr. Guy's diagnoses included, *inter alia*, "bilateral carpal tunnel syndrome with no evidence of weakness or decreased dexterity on exam."  (*Id.*)  The ALJ also observed that "Dr. Guy stated the claimant had moderate restrictions with regard to sitting, standing, walking, climbing stairs, bending, kneeling, and squatting; and should avoid smoke[,] including tobacco smoke, dust, and other known respiratory irritants."  (*Id.*)

The ALJ then noted that in April 2018, Plaintiff presented to Baker Rural Health Clinic and was diagnosed with, *inter alia*, carpal tunnel syndrome.  (Tr. 23-24.)  The ALJ also observed, in relevant part, that:

> In April of 2018, the claimant presented to Dopson Family
> Medical Center with complaints of bilateral hand pain and
> swelling times [sic] six years as well as numbness in fingers
> intermittently.  She reported being diagnosed with carpal tunnel
> syndrome several years back, but not having electrodiagnostic
> studies or [X]-rays.  Exam revealed full range of motion of both
> shoulders, elbows and wrists.  Deep tendon reflexes were present
> and equal bilaterally at biceps, triceps[,] and brachioradialis.
> Motor strength was 5/5 in all motor groups.  There was a strong
> positive Tinel's over the carpal tunnel bilaterally and positive
> Phalen's sign.  Distal neurovascular exam was normal with
> normal sensation in all dermatomes.  2-point sensation was
> intact to 5 mm in all digits.  Dr. Pino's diagnosis was bilateral
> carpal tunnel syndrome, right greater than left (Exhibit 12F).

(Tr. 24.)  The ALJ also noted that during a follow-up appointment at the

Baker Rural Health Clinic, a "[r]eview of symptoms [sic] was negative," the

"[e]xam was within normal limits," and that Linda Heilman, ARNP,

diagnosed Plaintiff with arthritis, carpal tunnel syndrome, and

hypothyroidism.  (*Id.*)  The ALJ stated that in April 2019, Ms. Heilman

diagnosed Plaintiff's with carpal tunnel syndrome, COPD, hypertension,

Grave's disease, arthritis, hypothyroidism, elevated TSH, neck pain, and low

back pain with sciatica.  (Tr. 25.)  He also stated that Plaintiff's "X-rays of the

lumbar spine showed slight degenerative changes at L3" and "X-rays of the

cervical spine showed straightening of normal lordosis."  (*Id.*)

As for the opinion evidence, the ALJ gave little weight to the opinion of

the State agency medical consultant's finding that Plaintiff could perform

work at the medium level, "as evidence received subsequent to this review

documents objective medical findings restricting the claimant to no more than light work." (*Id*.)  The ALJ gave significant weight to the State agency psychological consultants who opined that Plaintiff had "no severe mental impairment[s]." (*Id*.)  The ALJ also "considered the opinion of Dr. Anderton for mild to moderate limitations regarding daily living activities, particularly with regard to stress tolerance and ability to persist at activities over time," but found that these opinions were "not supported by objective medical findings and appear[ed] to be based on claimant's report instead of objective medical findings." (*Id*.)

The ALJ then accorded significant weight to the February 2017 opinion of Dr. Guy, reasoning that it was supported by "objective medical findings and [was] consistent with the medical evidence of record." (*Id*.)  The ALJ noted that Dr. Guy "had the opportunity to examine the claimant and that his examination [did] not document any objective medical findings that would prevent the claimant from performing a restricted range of light work." (*Id*.)  The ALJ also gave little weight to the "statement of Dr. Perera that the claimant cannot perform her past work" because it was "not supported by objective medical findings" and was on an issue reserved for the Commissioner. (*Id*.)

The ALJ determined that Plaintiff's RFC was supported by the following:

First, the claimant has described daily activities, which are not entirely limited.  A[t] one point or another in the record, the claimant has reported the following activities: lifting heavy logs/branches,[10] pushing boxes,[11] caring for her infant grandchild, taking care of her dog, taking care of her personal needs, preparing meals, doing household chores and laundry with breaks, driving short distances, and being able to manage finances [].

Second, although the claimant has received treatment for the allegedly disabling impairments, that treatment has been essentially routine and/or conservative in nature.  There are also gaps in the claimant's history of treatment.  Furthermore, examinations and diagnostic testing, which have been discussed/outlined above, do not document any objective medical findings that would prevent the claimant from performing work activity within the established [RFC] [].

(Tr. 26.)

The ALJ also added that another factor influencing his RFC

determination was Plaintiff's "generally unpersuasive appearance and

demeanor while testifying at the hearing."  (*Id.*)  According to the ALJ, "this

observation is only one among many being relied on in reaching a conclusion

regarding the persuasiveness of the claimant's allegations and the claimant's

---

[10] Of note, in summarizing the objective medical evidence, the ALJ stated that in March 2016, Plaintiff "presented to the ER with complaints of neck and back pain after lifting heavy logs/branches."  (Tr. 22.)  The ALJ acknowledged Plaintiff was diagnosed with "neck injury, cervical strain, and cervical radiculopathy."  (*Id.*)

[11] The ALJ also noted that in January 2019, Plaintiff presented to the ER "with complaints of back/flank pain after pushing some boxes."  (Tr. 24.)  He observed that Plaintiff's "[e]xam was within normal limits except for bilateral paraspinous tenderness and spasm" and that she was diagnosed with "acute lumbar myofascial strain."  (*Id.*)

[RFC]." (*Id.*)  The ALJ found that Plaintiff "portrayed no evidence of pain or discomfort while testifying at the hearing" and that, "[w]hile the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of pain on a day-to-day basis, the apparent lack of discomfort during the hearing is given some slight weight." (*Id.*)  The ALJ also explained that "given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by a treating doctor." (*Id.*)  However, he noted that "a review of the record in this case reveals no restrictions recommended by the treating doctor." (*Id.*)

At step four, the ALJ determined that based on the RFC and the testimony of the vocational expert ("VE"), Plaintiff is capable of performing her past relevant work as a customer service clerk and medical secretary. (Tr. 26.)  Thus, the ALJ concluded that Plaintiff was not disabled from the alleged onset date through the date of the decision. (Tr. 27.)

### D.   Analysis

The Court agrees with Plaintiff that the ALJ's RFC finding that she can perform frequent handling and fingering is not supported by substantial evidence and that such error warrants a remand.  Although Defendant counters, in part, that substantial evidence supports the ALJ's determination that Plaintiff "remained capable of frequent fingering and handling, despite

her carpal tunnel syndrome" (Doc. 24 at 6), Defendant's arguments are unavailing.

An ALJ must "consider all medical opinions in a claimant's case record, together with other relevant evidence." *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 962 (11th Cir. 2015) (citation omitted)). "Medical opinions are statements from physicians and psychologists or other medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." *Winschel*, 631 F.3d at 1178-79 (internal citations omitted). An ALJ must also specifically state the weight accorded to different medical opinions, and the reasons for doing so. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). The ALJ must give a treating physician considerable weight, unless there is good cause to do otherwise. *Lewis*, 125 F.3d at 1440. Moreover, an "ALJ's rejection of a treating physician's opinion must be supported by clearly articulated reasons." *Bradley-Bell v. Berryhill*, No. 8:18-cv-863-T-AAS, 2019 WL 2480064, at *3 (M.D. Fla. June 13, 2019) (citing *Phillips*, 357 F.3d at 1240-41). "Without clearly articulating [her] reason for rejecting a treating physician's opinion, the reviewing court cannot determine if the ALJ's decision is rational or supported by substantial evidence." *Id.* (citing *Winschel*, 631 F.3d at 1179).

"Therefore, when the ALJ fails to 'state with at least some measure of clarity the grounds for [her] decision,' [the reviewing court] will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'" *Id.* (quoting *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

While "[a]n ALJ is not required to refer to every piece of evidence in his decision," an "ALJ may not engage in picking and choosing evidence to justify the denial of a claim." *Bradley-Bell*, 2019 WL 2480064, at *4 (citing *Marbury v. Sullivan*, 957 F.2d 837, 839-41 (11th Cir. 1992); *Boughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985)). An ALJ is "free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Huntley v. Comm'r of Soc. Sec. Admin.*, 683 F. App'x 830, 832 (11th Cir. 2017) (citing *Sryock*, 764 F.2d at 835). However, an "ALJ may not ignore relevant evidence, particularly when it supports the plaintiff's position." *Bradley-Bell*, 2019 WL 2480064, at *4 (citing *Meek v. Astrue*, No. 3:08-cv-317-J-HTS, 2008 WL 4328227, at *1 (M.D. Fla. Sept. 17, 2008)).

As Plaintiff contends, the ALJ "discounted the [S]tate agency [doctor's] opinions as not being sufficiently limiting, but did not explain how he reached the conclusion that Ms. Raulerson could 'frequently' (defined by the Dictionary of Occupational Titles as up to 66% of an eight hour workday)

engage in fingering and in handling."[12]  (Doc. 23 at 11.)  Although the ALJ discussed Dr. Guy's February 2017 physical examination, including Plaintiff's positive Tinel's sign bilaterally and diagnosis of "bilateral carpal tunnel syndrome with no evidence of weakness or decreased dexterity on exam," Dr. Guy's evaluation and opinion predated Dr. Pinto's treatment records and findings by more than a year and did not consider Plaintiff's worsening carpal tunnel syndrome and "significant symptomatology."  (*Compare* Tr. 596-601 *with* Tr. 609-12.)  The ALJ also failed to acknowledge Dr. Pinto's opinion that Plaintiff will likely require surgery for her carpal tunnel syndrome.  (Tr. 612.)

Here, the ALJ failed to adequately explain how he determined that Plaintiff could perform frequent fingering and handling and appeared to ignore probative objective and opinion evidence from Dr. Pinto suggesting that Plaintiff's carpal tunnel syndrome had worsened, that she experienced significant symptomatology as a result thereof, and that she would likely require surgical intervention.[13]  Thus, the ALJ's failure to explain the basis

---

[12] Frequently is defined as an activity or condition that exists from 1/3 up to 2/3 of the time.  U.S. Dep't of Labor, Dictionary of Occupational Titles, App'x C (4th Ed., Rev. 1991), 1991 WL 688702.

[13] Plaintiff's counsel also explained that while Plaintiff was directed to return to Dr. Pinto after the completion of EMG/NCV studies, she testified at the hearing that "she went through the Baptist charity program to try to have the nerve conduction study/EMG done" but "the provider refused to do the procedure in an office setting and insisted that it be performed in the hospital setting."  (Doc. 23 at 14; Tr. 52.)  "Because of this," Plaintiff explained, "the procedure was not approved for coverage through the charity program due to the need for it to be performed in a

for his finding that Plaintiff could perform frequent fingering and handling and his failure to explain how he weighed some of Dr. Pino's probative opinions, if at all, regarding the severity of Plaintiff's carpal tunnel syndrome frustrates judicial review.  Therefore, the ALJ erred by failing to properly consider the treatment records from Dr. Pinto, consisting of "crucial portions of medical evidence" with regard to Plaintiff's carpal tunnel syndrome, and by "not providing good cause for doing so."  *Bradley-Bell*, 2019 WL 2480064, at *4.  These errors render the Court unable to determine "whether the ALJ's decision is supported by substantial evidence" and requires remand.[14]  (*Id.*)

Based on the foregoing, the ALJ's RFC finding that Plaintiff can perform frequent fingering and handling appears to be unsupported by substantial evidence.  Therefore, the undersigned finds that this matter is due to be remanded with instruction for the ALJ to fully address Dr. Pinto's treatment records and opinion regarding Plaintiff's carpal tunnel syndrome and to reconsider Plaintiff's RFC assessment, in particular her fingering and

---

hospital setting" and she "could not afford nerve conduction studies without assistance."  (*Id.*)

[14] Plaintiff also argues that the ALJ's error was not harmless because the VE testified that her past work as a customer service representative and medical secretary required frequent fingering and handling, "[a] limitation to only occasional or less of *either* fingering or handling would have precluded Ms. Raulerson's ability to perform her past work," and the ALJ did not make alternate findings at step five.  (Doc. 23 at 17 (emphasis in original).)  Plaintiff's arguments are well-taken.

handling limitations.  *See Knoblock v. Colvin*, No. 8:14-cv-646-MCR, 2015 WL 4751386, at \*3 (M.D. Fla. Aug. 11, 2015) (citing *Kahle v. Comm'r of Soc. Sec.*, 845 F. Supp. 2d 1262, 1272 (M.D. Fla. 2012)) (internal citations and quotation marks omitted) (noting "reversal is required where an ALJ fails to sufficiently articulate the reasons supporting his decision to reject portions of a medical opinion while accepting others").  In light of this conclusion, the Court need not address Plaintiff's remaining arguments.  *See Jackson v. Bowen*, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam); *Freese v. Astrue*, 2008 WL 1777722, at \*3 (M.D. Fla. Apr. 18, 2008).

Accordingly, it is **ORDERED**:

1.   The Commissioner's decision is **REVERSED and REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) with instructions to the ALJ to conduct the five-step sequential evaluation process in light of all the evidence, including the medical evidence and opinions from treating, examining, and non-examining sources, to develop a complete record, and conduct any further proceedings deemed appropriate.

2.   The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions, and close the file.

3.   The judgment should state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any § 406(b) or § 1383(d)(2) fee application must be filed within the parameters set

forth by the Standing Order on Management of Social Security Cases entered in *In re: Administrative Orders of the Chief Judge*, Case No.: 3:21-mc-1-TJC (M.D. Fla. Dec. 7, 2021).

   **DONE AND ORDERED** at Jacksonville, Florida, on March 23, 2022.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record